

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 9 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHARLES CLEVELAND,            §
aka CHARLES CLEVELAND NOWDEN, §
                             §
        Petitioner,          §
                             §
v.                           §      No. 4:14-CV-462-A
                             §
WILLIAM STEPHENS, Director,  §
Texas Department of Criminal §
Justice, Correctional        §
Institutions Division,       §
                             §
        Respondent.          §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Charles Cleveland, aka Charles Cleveland Nowden, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Williams Stephens, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I.  Factual and Procedural History

In January 2010 petitioner was indicted on one count of possession with intent to pass a forged government document, money, in the 432nd District Court of Tarrant County, Texas.

Specifically, the indictment alleged that on or about November 6,

2009, petitioner did–

> then and there intentionally, with intent to defraud or
> harm another, possess with intent to pass, a forged
> writing knowing such writing to be forged, and such
> writing had been so made that it purported to be the
> act of Henry Paulson who did not authorize the act and
> said writing was or purported to be part of an issue of
> money of the tenor following:

> [image of a $20 bill]

Adm. R., Clerk's R. 2, ECF No. 12-1.

The indictment also included a repeat-offender notice

alleging a prior 1996 federal felony conviction for bank fraud

and aiding and abetting. On October 28, 2011, the state filed

notice that it intended to seek further enhancement of

petitioner's sentencing range by alleging that, before his prior

conviction for bank fraud and aiding and abetting, petitioner was

finally convicted in 2001 of the federal felony offense of

possession of contraband cigarettes. *Id.* at 144A, ECF No. 12-2.

On November 18, 2011, petitioner's trial commenced. At

trial, Stephen Howard testified that on the night of November 6,

2009, he was working the concession stand at the Cinemark Movie

Theater in Mansfield, Texas. *Id.*, Reporter's R., vol. 6, 29, ECF

No. 12-4. Petitioner ordered refreshments and paid with a $20

bill. *Id.* at 30. Because the bill was over $10, Howard marked it

2

with a counterfeit detection pen and "it came up black,"
indicating that the bill was "fake." *Id*. Howard then put the bill
under a UV light and determined that the bill had no security
strip, a "microstrip." *Id*. at 31, 80. Once he confirmed the bill
was fake, he notified a manager. *Id*. Howard also identified
petitioner in court as the person who passed the counterfeit bill
to him. *Id*. at 34-35. According to Howard, petitioner acted
nervous, kept asking if there was something wrong with the bill,
asked for the bill back, and tried to give him another bill. *Id*.
at 36-40. Mike Lemoine, an off-duty police officer, testified
that he escorted petitioner outside until other officers arrived
to take him into custody and afterward checked the contents of
petitioner's refreshments where he found six more counterfeit $20
bills inside a hotdog wrapper. *Id*. at 48-49. John Tellman, a
Secret Service agent, testified that every bill has the name of
the Secretary of Treasury on it and that Henry Paulson, an ex-
Secretary of Treasury, was listed on the counterfeit bill passed
by petitioner. *Id*. at 86-87. Tellman also testified that the
Secretary of Treasury does not authorize anyone to make
counterfeit bills and that the bills in petitioner's possession
and the one he passed were not authorized by Henry Paulson. *Id*.
at 87-88.

Based on the evidence, the jury found petitioner guilty of possession with intent to pass a forged government document. After the trial on punishment, the jury found the enhancement allegations true, increasing petitioner's punishment range to 25 to 99 years' or life imprisonment, and sentenced petitioner to eighty years' imprisonment. Adm. R., Clerk's R. 182, ECF No. 12-2. Petitioner appealed, but the Amarillo Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Id.*, Docket Sheet, ECF No. 11-6. Petitioner filed two state applications for writ of habeas corpus challenging his conviction. The first was dismissed by the Texas Court of Criminal Appeals because his direct appeal was still pending and the second was denied without written order. *Id.*, WR-80,342-01 & -02, ECF Nos. 13-1 & 13-2. Any reference to petitioner's state habeas application in this opinion is a reference to his second state habeas application.

## II.  Issues

In nine grounds for relief, Petitioner claims—

(1) He is actually innocent of the offense;

(2) His conviction and sentence are void because the indictment, on its face, is false and the trial court was without subject matter jurisdiction;

4

(3) The indictment is fatally defective;

(4) He was not present at a pretrial proceeding and his absence violated his Sixth Amendment right;

(5) The trial court "constructively amended" the indictment and the jury was instructed on a counterfeit theory that was not alleged in the indictment;

(6) The indictment is fatally defective because of an irreconcilable variance "between the purported clause and the tenor clause" and fails to state an offense;

(7) His sentence was improperly enhanced because the instruction to the jury was false where there was no evidence of a final conviction;

(8) He was denied counsel during the critical stages of trial; and

(9) the "district court" erred in not granting an evidentiary hearing on his claims of jurisdiction and the violation of his constitutional rights.

Pet. 6-7(e), ECF No. 1; Order & Mot. for Leave to Amend., ECF Nos. 27 & 28.

### III.  Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claims raised as required by 28 U.S.C. § 2254(b)(1), save for petitioner's actual-innocence claim. Respondent does not believe that the petition is barred by limitations or subject to the successive-petition bar. 28 U.S.C. § 2244(b), (d). Resp't Answer 4-5, ECF No. 19.

## IV.   Discussion

### A.   Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S.

362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

## B. Actual Innocence

Under his first ground, petitioner claims he is actually innocent of the offense because he purchased "two Coke[s], two hot dogs, and popcorn, totaling $16, with a $20 bill. And that note was accepted by the clerk as genuine currency." Pet. 6, ECF No. 1; Pet'r's Mem. 1-2, ECF No. 2. Thus, he claims the movie theater was not defrauded or harmed. In support, petitioner presented the "Reporting Officer Narrative" attached to the

---

[1]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

probable-cause affidavit and the "U.S. Secret Service In Custody Response," indicating that petitioner handed Howard a real $20 bill and that the bill was accepted as genuine. Pet'r's Mem. Apps. B & C, ECF No. 2.

"Actual innocence" is not a free-standing ground for habeas corpus relief. *Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000), *cert. denied,* 532 U.S. 915 (2001). The Supreme Court reaffirmed in *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013), that it has not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. Until that time, such a claim it not cognizable on federal habeas review. Accordingly, petitioner is not entitled to relief under his first ground.

## C.  Defective Indictment

Under his second, third, fifth and sixth grounds, petitioner claims the indictment is fatally defective because it does not set forth the offense charged in plain and intelligible words; there is an irreconcilable variance between the purport and tenor clauses; it alleges "an issue of money" which negates the forgery allegation and thus fails to allege an offense or vest the trial court with jurisdiction; and it did not put him on notice of the

"counterfeit" allegation. Pet. 6-7(c), ECF No. 1; Pet'r's Mem. 4-6, 8-11, ECF No. 2.

A defect in a state indictment is not a matter for federal habeas relief unless the indictment was so defective that the convicting court had no jurisdiction. *Neal v. Texas,* 870 F.2d 312, 316 (5th Cir. 1989); *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir. 1980). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir.), *cert. denied,* 512 U.S. 1289 (1994). If the highest state court has held, either expressly or implicitly, that the indictment was sufficient under state law, the federal habeas inquiry is at an end. *Alexander v. McCotter,* 775 F.2d 595, 598-99 (5th Cir. 1985). A federal court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial of jurisdiction." *McKay v. Collins,* 12 F.3d 66, 69 (5th Cir. 1994).

Petitioner presented his claims concerning the indictment in his state habeas application, and the Texas Court of Criminal Appeals denied relief without written order, thus implicitly holding that the indictment adequately charged an offense, vested

the trial court with jurisdiction, and gave petitioner sufficient notice of the charges against him and that any variance between the purport and tenor clauses was not fatal as a matter of state law. This ends the federal habeas corpus inquiry as to these grounds for relief. This court must accord due deference to the state court's determination. Accordingly, petitioner is not entitled to relief under his second, third, fifth and sixth grounds.

**D.  Pretrial Proceeding**

Under his fourth ground, petitioner claims that in violation of his Sixth Amendment right, he was not present at a pretrial proceeding held on November 1, 2011. Pet. 7, ECF No. 1; Pet'r's Mem. 7, ECF No. 2. He cites the court to article 28.01 of the Texas Rules of Criminal Procedure and the Supreme Court case in *Kentucky v. Stincer,* 482 U.S. 730 (1987), holding that under the Due Process Clause, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." 482 U.S. at 745. The record shows a November 1, 2011, docket entry in the trial court docket sheet stating "Pretrial" and a remark by the trial court during an October 21,

2001, pretrial hearing that "we'll be back for pretrial on

November 1st." Adm. R., Reporter's R., vol. 2, 29, ECF No. 12-3.

However, the state responded to the claim in the state habeas

proceeding as follows:

> The State acknowledges that the trial court
> originally scheduled a pre-trial hearing on November 1,
> 2011, as reflected in the criminal docket. See Trial
> Reporter's Record II:29; Criminal Docket. However, the
> reporter's record shows that the pre-trial hearings
> actually occurred on November 14, 2011, and that the
> applicant was present for these hearings. See Trial
> Reporter's Record III:2 & IV:2.[2] Thus, the applicant
> was not denied his right to be present at his pre-trial
> hearings.
>
> > [2]The trial court's setting journal
> > substantiates that no hearing occurred on
> > November 1, 2011. See Settings Journal -
> > cause number 1182411.

Adm. R., WR-80,342-02 writ, 215, ECF No. 13-3.

To the extent petitioner claims a violation of article 28.01

of the Texas Code of Criminal Procedure, no federal

constitutional claim is implicated. *Jackson v. Johnson,* 194 F.3d

641, 656 (5th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000).

And, absent proof that a hearing was, in fact, held on November

1, 2011, petitioner cannot demonstrate a federal constitutional

due process violation. Conclusory allegations with no factual

basis are insufficient to raise a constitutional issue. *Koch v.

Puckett,* 907 F.2d 524, 530 (5th Cir. 1990). Accordingly,

petitioner is not entitled to relief under his fourth ground.

## E.   Sentence Enhancement

Under his seventh ground, petitioner claims his sentence was improperly enhanced under § 12.41(d) of the Texas Penal Code because his prior federal court convictions were not final at the time of his trial. Pet'r's Mem. 12-14, ECF No. 2. Based on the Texas Court of Criminal Appeals's denial of petitioner's state habeas application, this court may assume that the state court rejected the claim and impliedly concluded, as a matter of state law, that petitioner's sentence was properly enhanced. This issue raises a question of state law only and, thus, fails to present a meritorious basis for federal habeas corpus relief. *Rubio v. Estelle,* 689 F.2d 533, 536 (5th Cir. 1982).[2] Accordingly, petitioner is not entitled to relief under his seventh ground.

## F.   Right to Counsel

Under his eighth ground, petitioner, who asserted his right to self-representation, claims he was denied his Sixth Amendment right to counsel during critical stages of trial because, after

---

[2]The court recognizes that violation of state sentencing statutes can in certain circumstances, not applicable here, invoke constitutional protections. *See, e.g., Burge v. Butler,* 867 F.2d 247, 250 (5th Cir.1989); *Hill v. Estelle,* 653 F.2d 202, 204 (5th Cir.). Moreover, for the reasons stated in the state's response to petitioner's state habeas application, this claim lacks merit. Adm. R., WR-80,342-02 Writ, 217-20, ECF No. 13-3.

realizing that he was incompetent to represent himself following voir dire and revoking his waiver of counsel, the trial court denied his request to have retained counsel Lisa Mullen be "placed back on the case" or allow him an opportunity to re-hire her. Order, ECF No. 28; Pet. 7(d), ECF No. 1; Pet'r's Mem. 14-15. The state appellate court addressed petitioner's waiver of his right to counsel, assertion of his right to self-representation, and his withdrawal of the waiver as follows:

> Appellant was originally represented by retained counsel. On October 18, 2011, he filed a Motion to Proceed Pro Se. A hearing was held on the motion on October 21, 2011. During that hearing, the trial court admonished appellant on the dangers of self-representation but eventually honored appellant's request. Appellant then executed a written waiver of his right to counsel. Thereafter, a hearing on pretrial matters was held on November 14, 2011, at which numerous defense motions were considered. A jury was selected the next day, a process in which appellant participated. On the morning of trial, that is November 16, appellant stated he was "going to revoke . . . [his] right to represent . . . [himself] and put Lisa Mullen back on the case." At no time prior thereto did he move to continue the proceeding or otherwise ask for a postponement to allow him to prepare. Instead, he had moved for a speedy trial setting. Upon hearing the request, the trial court responded:

>> If she appears, that will be great, but we're not going to delay the proceedings. You've made a decision to represent yourself. I'm not going to allow you to manipulate, delay or frustrate the system, so we're going to proceed.

Appellant then complained that he had no way to prepare a
defense in jail and again stated he was revoking his waiver.
The court answered: "Okay. If you want to have Ms. Mullen
come and represent you, that's fine, but we're not going to
delay further proceedings, okay?" Appellant then proceeded
to represent himself throughout the trial. However, he filed
a motion for new trial through retained counsel, alleging
the trial court did not properly admonish him, his waiver
was not clear and unequivocal, and the trial court should
have provided him standby counsel. After a hearing, the
trial court denied the motion.

*Waiver of Right to Counsel*

Appellant first argues that the trial court did
not properly admonish him before allowing him to waive
his right to counsel. According to appellant, these
admonishments should have included the fact that
because he was incarcerated, there would be
restrictions on his access to discovery in the case,
that the discovery was voluminous, and that there might
be insufficient time to review it. We overrule the
issue.

Although a defendant has the right to assistance
of counsel, that right may be waived. *Faretta v.
California*, 422 U.S. 806, 834-35 (1975). For a waiver
to be valid, 1) it must be intelligently and knowingly
made, and 2) the party waiving it must be made aware of
the dangers and disadvantages of self-representation.
*Cerf v. State*, 366 S.W.3d 778, 783 (Tex. App.-Amarillo
2012, no pet.). This obligates the trial court to ". .
. make an inquiry, evidenced by the record, which shows
that the defendant has sufficient intelligence to
demonstrate a capacity to waive his right to counsel
and the ability to appreciate the practical
disadvantage he will confront in representing himself."
*Manley v. State*, 23 S.W.3d 172, 173-74 (Tex. App.-Waco
2000, pet. ref'd).

Here, the record discloses that the trial court
informed appellant 1) of the charges against him and
the range of punishment if enhanced, 2) that he would

14

be treated no differently from an attorney, 3) that he
would have to follow all of the Rules of Procedure, the
Penal Code, the statutes, the Constitution, and
applicable rules, 4) that he would have to follow rules
to preserve any error in his case, 5) that attorneys
have specific training in the laws, 6) that his self-
representation could result in a conviction, 7) that a
jury decides any factual issues, 8) that the charge
against him was a third degree felony if there was no
enhancement, 9) that he might not have the experience
or level of training to properly object or preserve
error, 10) that the court believed it would be a
mistake for appellant to represent himself, 11) that
the court knew of several instances when persons who
represented themselves received long sentences and
later regretted self-representation, and 12) that he
had the right to appointed counsel if he could not
afford to hire one. With this knowledge, appellant
continued to insist on representing himself. The trial
court also determined that appellant had a high school
education, that he could read and write, that he could
afford to hire an attorney, that he had never had any
mental or competency issues, that appellant believed he
could become familiar with the Penal Code and
understand the law, that appellant had previously
"[k]inda sorta" represented himself in a federal court
proceeding, and that appellant was not being "tricked"
into making his decision. The record reflects that
appellant's waiver was intelligently and knowingly
made. *See Shaman v. State,* 280 S.W.3d 271, 274 (Tex.
App.-Amarillo 2007, no pet.) (stating that the waiver
was made intelligently and knowingly when 1) the trial
court inquired into the defendant's education and his
ability to read and write, 2) the defendant had
previously represented himself in a civil eviction
action, and 3) the trial court informed him of his
right to counsel, the charges against him, the possible
maximum sentence, some of the ways that a sentence of
incarceration could affect his life, that he would be
required to abide by the rules of evidence and
procedure and that he would not be granted special
consideration because he lacked training in the law).

As to the failure to admonish appellant that he would have difficulty in preparing for trial due to his incarceration, the record reflects that the State held a meeting with appellant at which time appellant was permitted to review the State's file and take notes if he wished. Moreover, at a pretrial hearing, the State made other documents available for review by appellant and represented that all documents would be available for appellant's use at trial. Though appellant was not permitted to take copies of most of the documents to his jail cell for use because the State's policy prevented its documents from being taken into jail or prison facilities, he again did not move for a continuance to further prepare. And, though appellant complained to the court that there were more than 700 pages of documents for him to review in several hours, many of those documents pertained to three other pending charges against him and not the current charge.

It is true that a defendant must be generally aware of the practical disadvantages of self-representation. *Johnson v. State,* 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). Yet, appellant cites us to no authority that the trial court was required to know and inform him about the amount of discovery materials involved in the case or about every possible obstacle he might encounter in preparing a defense due to his incarceration. *See Shaman v. State,* 280 S.W.3d at 275 (holding that the validity of a waiver of counsel was not dependent upon the trial court's ability to foresee the complete ramifications that a conviction for the offense might have).

### Revocation of Right of Self-Representation

Next, appellant argues the trial court erred in not allowing him to revoke his right of self-representation. We overrule the issue.

A defendant may withdraw a waiver of the right to counsel at any time. TEX. CODE CRIM. PROC. ANN. art. 1.051(h) (West Supp. 2012). And, while appellant said, the morning of trial and after jury selection, that ".

16

. . I'm going to revoke my right to represent myself
and put Lisa Mullen back on the case," it must be
remembered that the trial court stated it would be
"great" if his counsel appeared. That, at the very
least acknowledged and accepted the revocation of his
waiver. It simply opted not to delay the proceedings
given appellant's timing of his utterance. Furthermore,
we are cited to no authority requiring it to so delay
the trial on the morning of its commencement and after
the jury was selected. Indeed, statute vests the trial
court with discretion to continue the trial for ten
days. *Id.* We cannot say that its discretion was abused
under the circumstances before it. *See Williams v.
State,* 356 S.W.3d 508, 521 (Tex. App.-Texarkana 2011,
pet. ref'd) (holding that when the defendant sought to
substitute retained counsel for appointed counsel at a
pretrial hearing and retained counsel stated he could
not be ready for trial, the court was not required to
delay the proceedings to accommodate the tardy decision
to retain counsel when the trial court did not bar
retained counsel from participating).

And, to the extent that appellant also argues on
appeal that the trial court should have appointed
standby counsel or an investigator to assist him with
discovery, appellant requested neither. Moreover, there
is no absolute right to standby counsel even if the
defendant is indigent. *Hathorn v. State,* 848 S.W.2d
101, 123 n.12 (Tex. Crim. App. 1992); *Kane v. State,* 80
S.W.3d 693, 695 (Tex. App.-Fort Worth 2002, pet.
ref'd). Here, appellant was not even indigent.

Adm. R., Mem. Op. 2-7, ECF No. 11-7 (footnotes omitted).

The Sixth Amendment affords a criminal defendant both the

right to counsel at trial and the right to self-representation at

trial. *Faretta v. California,* 422 U.S. 806, 807 (1975). The Fifth

Circuit has long held that a defendant who waives the right to

counsel is entitled to withdraw that waiver and reassert the

right. *United States v. Taylor,* 933 F.2d 307, 311 (5th Cir.

1991). However, the Supreme Court has never explicitly addressed

a criminal defendant's ability to reassert his right to counsel

once he has validly waived it. *Marshall v. Rodgers,* 133 S. Ct.

1446, 1449 (2013). This court is limited by § 2254(d)(1) and

cannot grant habeas relief based on circuit case law alone.

Because the Supreme Court has not squarely addressed the issue,

the state court's conclusion that there was no Sixth Amendment

violation in this case is not contrary to "clearly established

Federal law, as determined by the Supreme Court." *Lopez v. Smith,*

135 S. Ct. 1, 1 (2014); *Marshall,* 133 S. Ct. at 1451.[3]

Accordingly, petitioner is not entitled to relief under his

eighth ground.

## G.  Evidentiary Hearing

Under his ninth and final ground, petitioner claims in a

non-specific manner that the "district court erred in not

granting" an evidentiary hearing on his "claims of jurisdiction

and the violation of his due process under the Fifth, Sixth, and

---

[3]The court notes that even under Fifth Circuit case law, a defendant's rights to waive counsel and to withdraw that waiver are not unqualified. A trial court need not countenance abuse of the right to counsel or the right to waive it. A defendant is not entitled to "choreograph special appearances by counsel," *McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984), or repeatedly alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice. *United States v. Taylor,* 933 F.2d 307, 311 (5th Cir. 1991).

Fourteenth Amendments." Pet. 7(e), ECF No. 1; Pet'r's Mem. 15-17, ECF No. 2.

To the extent petitioner complains that the state habeas court failed to conduct an evidentiary hearing, the claim fails to state a legal basis for federal habeas corpus relief. Alleged deficiencies in state habeas proceedings are not a basis for federal habeas relief. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

To the extent petitioner seeks an evidentiary hearing in this court, he fails to satisfy the requirements under § 2254(d)(1) and (e)(2). As to his grounds two through eight, adjudicated on the merits in state court, this court's review is limited to the record that was before the state court in light of the discussion above. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Section 2254(e)(2) also limits this court's review regarding claims not adjudicated on the merits in state court. To be entitled to an evidentiary hearing as to such claims, here petitioner's actual innocence claim, a petitioner must show that—

> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be
> sufficient to establish by clear and convincing
> evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant
> guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner asserts that he failed to raise his actual
innocence claim in state court because the investigative reports
were not part of his discovery and he did not receive the
documents until March 2014. Pet. 8, ECF No. 1. He further asserts
that the reports prove that he is actually innocent because he
purchased the refreshments at Cinemark with a real $20 bill that
was accepted by the clerk as genuine currency.[4] Thus,

---

[4]The "Reporting Officer Narrative" provides, in relevant part:

Upon arrival, I met with Officer Lemoine who related the following
information. Officer Lemoine advised that at approximately 1845
hrs. on this date he was approached by the Asst. Manager of
Cinemark . . . who advised him that a tall back male had just
attempted to pay for popcorn, drinks, and two hot dogs by handing
the clerk what they believed to be a counterfeit $20 bill. Mr.
Norris stated that the clerk had checked the bill using a
counterfeit detection pen which left a black mark on the bill. Mr.
Norris advised that when the clerk confronted the subject about
the bill being counterfeit, the subject handed the clerk a real
$20 bill and requested that he return the counterfeit bill.
Instead, the clerk, Stephen J. Howard . . ., kept the counterfeit
bill and notified Mr. Norris.

Pet'r's Mem., App. B 4, ECF No. 2.

The "U.S. Secret Service In Custody Response" provides, in relevant
part:

Nowden was interviewed by officers at the scene. Nowden claimed
that he received the note in question when an unknown individual
made change for him at an unknown gas station. He claimed that he

he argues Cinemark was not defrauded and suffered no harm. These reports however are public information, in whole or in part, and provide no new evidence as they date back to the time of the investigations into the offense. Furthermore, they do not necessarily support petitioner's assertion of actual innocence, especially in light of Howard's testimony at trial that he did *not* take "a different 20" from petitioner. Adm. R., Reporter's R., vol. 6, 38-39, ECF No. 12-3.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of

---

Nowden was in possession of a soda, popcorn, and hot dog, which he purchased with genuine currency after the initial note was rejected. Officers were in the process of throwing the items in the trash prior to transporting Nowden when they discovered six (6) additional CFT $20 FRNs . . . inside the hot dog wrapper which still contained the hot dog. Officers reported feeling something unusual inside the hotdog while handling it.

. . .

Nowden stated that he contacted an unknown individual in the parking lot of a gas station whom he asked to make change for him. He said the individual gave him ten (10) $20 FRNs for two (2) genuine $100 FRNs. He said that he attempted to by [sic] a popcorn, hot dog, and coke, totaling $16, with one of the $20 FRNs received from the individual. The note was identified and rejected as counterfeit at which time he presented a $20 FRN from his pocket. That note was accepted as genuine. Nowden stated that he placed the remaining notes received from the unknown individual inside his hot dog and wrapper after the original note was rejected. He stated that he did this because he thought "they all must be bad." He could not identify where he passes the three (3) notes not accounted for in this case.

*Id.* App. C, 3-4.

21

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March ___9___, 2016.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE